Anthony L. YOUNG *v.* STATE of Arkansas

CR 08-189                                                288 S.W.3d 221

Supreme Court of Arkansas
Opinion delivered October 2, 2008

*David W. Talley, Jr.*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Nicana C. Sherman*, Ass't Att'y Gen., for appellee.

D ONALD L. CORBIN, Justice. Appellant Anthony L. Young appeals the order of the Columbia County Circuit Court convicting him of rape and residential burglary. He was sentenced, respectively, to a term of life imprisonment and 360 months' imprisonment, with his sentences to be served consecutively. On appeal, he argues that there was insufficient evidence to prove that he committed either offense. Our jurisdiction is pursuant to Arkansas Supreme Court Rule 1-2(a)(2). We find no error and affirm.

The record reveals the following facts. During the early morning hours of August 6, 2006, the Magnolia Police Department received a call that L.W., an eighty-four-year-old woman, had been raped in her home. When officers arrived at L.W.'s home, they found her distraught and agitated. L.W. told the officers that she had been asleep on her couch, when she was awakened by a black male standing by the couch and that he then raped her. She told officers that when she heard the sound of a car approaching her driveway, the attacker put on his clothes and fled the house. L.W. told officers that she believed it was either a brother or a cousin of Young's who had raped her.

Authorities subsequently arrested Young, charging him with one count of rape and one count of residential burglary. He was tried before a jury on October 31, 2007. At trial, Officer Josh

Bolton of the Magnolia Police Department testified that at approximately 4:50 a.m. on August 6, 2006, he and two other officers were approaching the end of their shift when they received an alert that a woman had been raped in her home. Officer Bolton stated that the officers proceeded to the home of L.W. Officer Bolton went around to the rear of the home to secure the scene. There, he discovered that a screen to a bathroom window had been pulled away from the frame, and the window was standing open.

Officer Sam Kirby testified that he also went to L.W.'s home, and when he first saw her, it appeared that she had been in some type of struggle. According to Officer Kirby, L.W. was crying, sweaty, and hysterical and stated that she had been raped.

Sergeant Cory Sanders testified that when he arrived at L.W.'s home with the other officers, L.W. was sweating, out of breath, shaking, and had tears in her eyes. L.W. told the officers that she had been raped by a young, black male that she believed to be the same person who had asked her the previous evening if he could clean out her flower beds for some money. L.W. told officers that she believed the man was Anthony Young's brother or cousin. When Sergeant Sanders asked L.W. to give a detailed account of what had happened, she stated that she had fallen asleep on her couch and woke up to find a young, nude, black male standing over her. L.W told Sergeant Sanders that the man put a pink bath towel over her face, got on top of her, and proceeded to rape her. When she attempted to call police from the phone in her den, she discovered that the phone line had been cut. She then called police from a phone in a bedroom. Sergeant Sanders testified that officers collected a pink towel and a pair of boxer shorts at the scene. Also taken into evidence was the tee-shirt-style nightgown that L.W. was wearing at the time of the rape.

Dr. William Pittman testified that he was on duty at the Magnolia City Hospital the morning of August 6, when a police officer brought in L.W. to be examined regarding an allegation of rape. According to Dr. Pittman, in the course of conducting a physical exam of L.W., he discovered two vaginal lacerations that were not consistent with consensual intercourse. Dr. Pittman elaborated that one of the lacerations had cut through L.W.'s skin near her anus and opined that the character of this laceration was similar to a tear in the skin caused by childbirth. According to Dr. Pittman, the condition of L.W.'s vaginal area was consistent with unexpected forced sex.

Melissa Myhand, a forensic DNA analyst with the Arkansas State Crime Lab, testified that a tee shirt submitted to her was tested, and a semen stain was discovered on it. Myhand analyzed the semen stain and discovered that the DNA extracted from that stain matched Young's DNA sample that had been submitted by authorities.

L.W. testified that a man broke into her home through her bathroom window as she lay sleeping on her couch. When she awoke, she saw the man standing naked near her couch, and he raped her. According to L.W., the man asked her if she had any money, and she told him that all she had was some change, to which he replied he did not want change, he wanted some real money. L.W. stated that she heard a car approach her driveway and that the man opened her door and ran out of the house, leaving his underclothes behind. According to L.W., five to ten minutes after the man fled her home, she called 911 to report the rape. When asked if she had ever seen the man before, L.W. stated that she had seen him either on a porch or in the yard of a home down the street from her. L.W. also stated that Young had previously told her there were snakes in her flower bed and he wanted to clean it out for her. Finally, L.W. testified that she never invited Young into her home.

At the conclusion of the State's case, counsel for Young moved for a directed verdict, arguing that there had been no testimony by anyone about any penetration of L.W. by any body member of Young's. He further argued that because the case law requires evidence of penetration, the State had not proven its case with regard to the charge of rape. Counsel also argued that a directed verdict should be granted on the charge of residential burglary, as there was no identification of Young being in the home on any occasion. The trial court denied both motions. Counsel for Young rested without presenting any evidence and renewed his directed-verdict motions. The trial court again denied the motions, and the case was subsequently submitted to the jury. The jury returned a verdict of guilty on both counts, and Young was sentenced as outlined above. This appeal followed.

On appeal, Young argues that there was insufficient evidence to support his conviction on the charge of rape. Specifically, he argues that the State failed to present any evidence of penetration as is required to establish the offense. In support of his argument, Young cites to *Ward v. State*, 370 Ark. 398, 260 S.W.3d 292 (2007); *Jackson v. State*, 290 Ark. 375, 720 S.W.2d 282 (1986);

and *Clay v. State*, 290 Ark. 54, 716 S.W.2d 751 (1986), as examples of cases where there was specific evidence of penetration.

We treat a motion for directed verdict as a challenge to the sufficiency of the evidence. *Cluck v. State*, 365 Ark. 166, 226 S.W.3d 780 (2006). The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *See id.* Evidence is substantial if it is of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture. *See id.* On appeal, we view the evidence in the light most favorable to the State, considering only that evidence that supports the verdict. *See id.* Furthermore, circumstantial evidence may provide a basis to support a conviction, but it must be consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Sales v. State*, 374 Ark. 222, 289 S.W.3d 423 (2008). Whether the evidence excludes every other hypothesis is left to the jury to decide. *See id.* The credibility of witnesses is an issue for the jury and not the court. *See id.* Upon review, this court must determine whether the jury resorted to speculation and conjecture in reaching its verdict. *See id.*

■ With regard to a rape conviction, the testimony of a rape victim, standing by itself, constitutes sufficient evidence to support a conviction. *See, e.g., Hanlin v. State*, 356 Ark. 516, 157 S.W.3d 181 (2004). Moreover, in a rape case, "penetration can be shown by circumstantial evidence, and if that evidence gives rise to more than a mere suspicion, and the inference that might reasonably have been deduced from it would leave little room for doubt, that is sufficient." *Clem v. State*, 351 Ark. 112, 117-18, 90 S.W.3d 428, 430 (2002) (citing *Tinsley v. State*, 338 Ark. 342, 993 S.W.2d 898 (1999)).

Here, there was sufficient evidence to support Young's conviction for rape. L.W. testified that she awoke to find a young, nude, black man standing over her and that this man raped her. Dr. Pittman testified that upon examining L.W., he saw signs of trauma to her vaginal opening. When asked to explain, Dr. Pittman, relying on photographs taken during his examination of L.W., stated:

> In her case, we had two vaginal lacerations. One laceration would be right in this area right here (indicating) in the five o'clock position and one laceration was right here (indicating) going through the skin aspect of the vaginal opening. It was about in the

five o'clock position also, five to six o'clock position. This one actually — the second one I'm referring to — actually filleted open the skin at that area.

Dr. Pittman further testified that the vaginal lacerations suffered by L.W. were consistent with forced sex and would have been very uncomfortable. According to Dr. Pittman, he had never seen injuries such as L.W.'s result from consensual intercourse. He stated that injuries caused during consensual intercourse do not occur at the vaginal opening, "which is where the penis would be inserted" and where L.W.'s injuries occurred. Finally, Melissa Myhand testified that a semen sample found on L.W.'s nightgown contained DNA that matched the DNA of Young.

This evidence was sufficient to establish that Young raped L.W. In order to convict Young of rape, the State had to show that Young engaged in sexual intercourse or deviate sexual activity with another person by forcible compulsion. *See* Ark. Code Ann. § 5-14-103(a)(1) (Supp. 2007). "Sexual intercourse" is defined as penetration, however slight, of the labia majora by a penis. *See* Ark. Code Ann. § 5-14-101(10) (Repl. 2006). "Deviate sexual activity" includes among other things, any act of sexual gratification involving the "penetration, however slight, of the labia majora . . . of a person by any body member or foreign instrument manipulated by another person." *See* Ark. Code. Ann. § 5-14-101(1)(B). Although L.W. did not testify specifically about the penetration that occurred, the circumstantial evidence, specifically the testimony from Dr. Pittman regarding the injuries to L.W.'s vaginal opening, established the element of penetration. Accordingly, Young's argument on this point is without merit.

Young also argues that there was insufficient evidence to establish that he committed residential burglary. Specifically, Young argues that the State alleged that Young committed residential burglary by entering the residence of L.W. with the purpose of committing the felony offense of rape, and that because the State failed to prove the offense of rape, it also could not prove the offense of residential burglary.

Arkansas Code Annotated section 5-39-201(a) (Repl. 2006) sets forth the offense of residential burglary:

(a)(1) A person commits residential burglary if he or she enters or remains unlawfully in a residential occupiable structure of another person with the purpose of committing in the residential occupiable structure any offense punishable by imprisonment.

(2) Residential burglary is a Class B felony.

Notably, the statute does not require that property actually be stolen. *See* Ark. Code Ann. § 5-39-201(a)(1); *see also Navarro v. State*, 371 Ark. 179, 264 S.W.3d 530 (2007).

Because we have determined that there was sufficient evidence of rape, and Young's argument on this point is solely premised on the contention that there was insufficient proof of rape, there is no merit to Young's argument with regard to the conviction for residential burglary.

In compliance with Arkansas Supreme Court Rule 4-3(h), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to Young, and no prejudicial error has been found. *Boldin v. State*, 373 Ark. 295, 283 S.W.3d 565 (2008).

Affirmed.

WILLS, J., not participating.