2010 Ark. 148

**Jose Luis FERNANDEZ, Appellant,**

v.

**STATE of Arkansas, Appellee.**

**No. CR 09–1102.**

Supreme Court of Arkansas.

April 1, 2010.

Bob Frazier, Malvern, for appellant.

Dustin McDaniel, Att'y Gen., by: Laura Shue, Ass't Att'y Gen., for appellee.

DONALD L. CORBIN, Justice.

Appellant, Jose Luis Fernandez, appeals the judgment of the Grant County Circuit Court convicting him of rape and sentencing him to life imprisonment. As Appellant received a life sentence, jurisdiction of this appeal is properly in this court pursuant to Ark. Sup.Ct. R. 1–2(a)(2) (2009). His sole point for reversal is a challenge to the sufficiency of the evidence. We find no error and affirm the judgment.

Appellant was charged by felony information with the June 2008 rape of T.O., a then twenty-year-old woman with a mental defect or mental incapacity. At his jury trial, the State presented testimony that Appellant's family and T.O.'s family were neighbors, that Appellant had taken T.O. and other neighborhood children for a swim at the Saline River access on Highway 270 West in Grant County, and that Appellant and T.O. were spotted there in his van with their clothes disheveled. The State also presented scientific evidence that Appellant's DNA was found on a swab taken from T.O.'s rectum.

Appellant first moved for a directed verdict at the close of the State's case, arguing that the State failed to prove that the defendant engaged in sexual intercourse or deviate sexual activity with another person who is incapable of consent because she is physically helpless, mentally defective, or mentally incapacitated. The defense rested without presenting any evidence, and then renewed its motion for directed verdict. The trial court denied both motions. In so ruling, the trial court stated that T.O.'s testimony that Appellant took some actions toward her that were in the nature of sexual connotation created a fact question for the jury to decide. The trial court ruled further that the DNA evidence taken from the swabs of T.O.'s anal and vaginal areas created a factual issue for the jury to determine whether Appellant committed either rape or the lesser-included offense of second-degree sexual assault.

Appellant's sole point on appeal is that the trial court erred in denying his motions for directed verdict because the evidence was insufficient to support his rape conviction. Appellant concedes that T.O. was incapable of consent due to her

mental defect or mental incapacity. He contends, however, that there was insufficient evidence that sexual intercourse occurred. Specifically, he contends that there was insufficient evidence that penetration occurred. The State responds that substantial evidence supports Appellant's rape conviction.

We treat a motion for directed verdict as a challenge to the sufficiency of the evidence. *Young v. State*, 374 Ark. 350, 288 S.W.3d 221 (2008). The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* Evidence is substantial if it is of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture. *Id.* When a criminal defendant challenges on appeal the sufficiency of the evidence convicting him, we view the evidence in the light most favorable to the State, considering only that evidence that supports the verdict. *Id.* On appeal, this court does not weigh the evidence presented at trial, as that is a matter for the fact-finder; nor do we assess the credibility of the witnesses. *Woods v. State*, 363 Ark. 272, 213 S.W.3d 627 (2005).

Furthermore, circumstantial evidence may constitute substantial evidence to support a criminal conviction. *Jefferson v. State*, 372 Ark. 307, 276 S.W.3d 214 (2008). Guilt can be established without eyewitness testimony, and evidence of guilt is not less because it is circumstantial. *Ross v. State*, 346 Ark. 225, 57 S.W.3d 152 (2001). The long-standing rule in the use of circumstantial evidence is that, to be substantial, the evidence must exclude every other reasonable hypothesis than that of the guilt of the accused. *Jefferson*, 372 Ark. 307, 276 S.W.3d 214. The question of whether the circumstantial evidence excludes every hypothesis consistent with in-

nocence is for the jury to decide. *Id.* Upon review, this court determines whether the jury resorted to speculation and conjecture in reaching its verdict. *Id.* Overwhelming evidence of guilt is not required in cases based on circumstantial evidence; the test is one of substantiality. *Ross*, 346 Ark. 225, 57 S.W.3d 152.

The following statutory definitions apply to this case. A person commits the offense of "rape" if he or she engages in sexual intercourse or deviate sexual activity with a person who is incapable of consent because he or she is physically helpless, mentally defective, or mentally incapacitated. Ark.Code Ann. § 5–14–103(a)(2) (Supp.2009). "Sexual intercourse" is the penetration, however slight, of the labia majora by a penis. Ark.Code Ann. § 5–14–101(11) (Supp. 2009). "Deviate sexual activity" is any act of sexual gratification involving the penetration, however slight, of the labia majora or anus of a person by any body member or foreign instrument manipulated by another person. Ark.Code Ann. § 5–14–101(1)(B) (Supp.2009).

With regard to a rape conviction and to Appellant's specific argument on appeal, this court has stated that "penetration can be shown by circumstantial evidence, and if that evidence gives rise to more than a mere suspicion, and the inference that might reasonably have been deduced from it would leave little room for doubt, that is sufficient." *Young*, 374 Ark. at 354, 288 S.W.3d at 224 (quoting *Clem v. State*, 351 Ark. 112, 117–18, 90 S.W.3d 428, 430 (2002)). Here, there was circumstantial evidence of penetration sufficient to constitute substantial evidence to support Appellant's conviction for rape. We review the following evidence in the light most favorable to the State.

T.O. testified that she knew Appellant, that he lived near her, that he drove her

down to the river, and that she had seen Appellant's "dick" when they went swimming at the river. She also testified that Appellant had touched his "dick" to her "pussy" and that he was moving. She demonstrated the movement with dolls. She also used the dolls to demonstrate that both she and Appellant were partially unclothed at that time. During her testimony, T.O. was shown diagrams of a female and a male person and asked to identify various body parts; she identified the relevant female body parts as "tits" and "pussy" and the relevant male part as "dick."

T.O.'s grandmother Joyce Kelley testified that when she learned that Appellant had taken T.O. and others swimming, she went to find T.O. because T.O. could not swim. Kelley stated that after she arrived at the river, she found T.O. in a van with Appellant, that Appellant's pants were unzipped, and that T.O. was pulling up her clothes. Kelley stated that she then called the police.

Corporal Ryan Jacks of the Arkansas State Police testified that he was the first officer on the scene at the river, that he observed Appellant sitting in the driver's seat of a van, and that he observed T.O. with Kelley over by a bridge. He stated that he observed a pair of panties sticking outside of T.O.'s pant leg just above her shoe, and that Kelley became upset when he pointed this out to her. Corporal Jacks testified that he turned the investigation over to other officers and then transported Appellant to the Grant County Sheriff's Office.

Bob Adams, who was chief of the Sheridan Police Department when he testified, stated that he was a criminal investigator for the Grant County Sheriff's Office when Corporal Jacks brought Appellant to the sheriff's office in June 2008. Adams testified that he informed Appellant of his *Miranda* rights and took his statement. According to Adams, Appellant denied having sexual relations with T.O. but admitted that he was in the van with T.O. for not much more than ten minutes and that he touched her breasts and inner thigh area near her vagina.

In addition to the foregoing testimony, there was also circumstantial medical evidence admitted that constitutes substantial evidence to support the conviction. Terri Quillin, a registered nurse working at Hot Spring County Medical Center, testified that she took six samples from T.O. while obtaining rape-kit evidence, including oral, vaginal, and anal swabs. Quillin described the process of collecting the swabs and stated that "[t]heir legs are up so that you can get a swab on the inside of the vagina and on the inside of the rectum and deep into the oral cavity." Quillin stated that the swabs are not taken from the outside at all, "just on the inside." Quillin testified further that after she collected the rape-kit evidence from T.O., she sent it to the Arkansas State Crime Laboratory for evaluation.

Stacie Wassell, a forensic serologist at the Arkansas State Crime Laboratory, testified that she performed tests on T.O.'s vaginal, anal, and oral swabs and thereby confirmed the presence of semen on the vaginal and anal swabs. She stated that further tests showed that no spermatozoa cells were present. Wassell testified that it is possible to have the presence of seminal fluid without spermatozoa cells for several reasons, such as in cases where the male has had a vasectomy or has a low sperm count due to chemotherapy or other drug or alcohol use. Wassell also testified that the most common way that semen gets in a vagina is through penetration with a penis.

Mary Simonson, a forensic DNA examiner with the Arkansas State Crime Labo-

ratory, testified that she performed a DNA extraction on T.O.'s anal and vaginal swabs, and found only T.O.'s DNA without any foreign DNA. Simonson explained, however, that "when [7]you're having something like a vaginal swab or a rectal swab, something that's from somebody's body, you're going to have a whole lot of their DNA on it that's going to, that can easily mask a small amount of foreign DNA." Simonson stated that there are additional tests that can be performed that are specific to the Y chromosome that only males carry. She stated that it was common to perform the Y-chromosome testing in situations like the present one where there is a lot of female DNA and a small amount of semen.

Christopher Glaze, a forensic biologist and DNA analyst at the Arkansas State Crime Laboratory, testified and explained that sometimes when there is a mixture of male DNA and female DNA on the same sample, Y-chromosome testing, since it is male specific, will help provide a more full profile so that the female DNA does not mask what might be present from a male. He also explained that the Y chromosome is a direct inheritance such that any male's Y chromosome would be exactly the same as his father's or his son's or any brother's he had from the same father. Glaze testified that he performed Y–chromosomal–DNA analysis on T.O.'s vaginal and oral swabs. He testified that T.O.'s vaginal sample had trace amounts of male DNA, but not enough to make any comparisons. He explained that although he could usually get a full profile when semen is proved to be present on a vaginal swab, the DNA will sometimes be too limited to actually develop a full profile when there are no sperm cells. Glaze testified that from T.O.'s rectal swab he was able to develop a partial Y-chromosomal–DNA profile that matched the profile developed from Appellant's oral swab. [8]Thus, Glaze concluded that the DNA profile developed from T.O.'s anal swab had to come from either Appellant or someone in the direct line of descent from Appellant's father.

As we noted previously, "penetration can be shown by circumstantial evidence, and if that evidence gives rise to more than a mere suspicion, and the inference that might reasonably have been deduced from it would leave little room for doubt, that is sufficient." *Young*, 374 Ark. at 354, 288 S.W.3d at 224. Testimony from Nurse Quillin describing the procedure for taking the medical samples from inside the anus and vagina, together with evidence from the forensic experts concerning the presence of Appellant's Y-chromosomal DNA on T.O.'s rectal swab, clearly give rise to more than a mere suspicion and leave little room for doubt that penetration occurred here. Accordingly, the foregoing constitutes substantial evidence of the element of penetration, and Appellant's argument on this point is without merit.

Finally, we note that even though Appellant denied the allegations of raping T.O., the jury is not required to believe the self-serving statement he made to Investigator Adams. *Brown v. State*, 374 Ark. 341, 288 S.W.3d 226 (2008). Although the victim gave a different version of events than did Appellant, the jury was free to believe all or part of her testimony and disbelieve Appellant's assertions. *See id.* The jury may resolve questions of conflicting testimony and inconsistent evidence and may choose to believe all or part of any witness's testimony. *Wallace v. State*, 2009 Ark. 90, 302 S.W.3d 580.

[9]In summary, we conclude that the foregoing evidence constitutes substantial evidence to support the jury's conviction of Appellant for the rape of T.O. Accordingly, the circuit court did not err in denying Appellant's motions for directed verdict.

In accordance with Rule 4–3(i) of the Arkansas Supreme Court Rules, the record has been reviewed for all objections, motions, and requests made by either party that were decided adversely to Appellant, and no prejudicial errors were found.

The judgment of conviction is affirmed.