2010 Ark. 414

**Robert D. LOGGINS, Appellant,**

v.

**STATE of Arkansas, Appellee.**

No. CR 09–788.

Supreme Court of Arkansas.

Nov. 4, 2010.

Lea Ellen Fowler, Little Rock, for appellant.

Dustin McDaniel, Att'y Gen., by: Jake H. Jones, Ass't Att'y Gen., for appellee.

DONALD L. CORBIN, Justice.

⌐Appellant Robert D. Loggins appeals the judgment of the Union County Circuit Court convicting him of two counts of possession of a controlled substance with intent to deliver and one count each of simultaneous possession of drugs and firearms, possession of drug paraphernalia, and maintaining a drug premises. He was sentenced to life imprisonment on the simultaneous-possession charge and consecutive terms of imprisonment totaling 1,344 months on the remaining convictions; Loggins was also fined a total of $70,000. Jurisdiction is properly in this court pursuant to Ark. Sup. Ct.. R. 1–2(a)(2) (2010). Loggins's sole point for reversal is that there was insufficient evidence to support his convictions because the State failed to prove actual or constructive possession. We find no merit to his argument and affirm the judgment.

Loggins was tried by a jury along with a codefendant, Benjamin Carter. This court recently affirmed the judgment of Carter's convictions. *Carter v. State,* 2010 Ark. 293, 367 S.W.3d 544. The evidence presented at trial was recited in *Carter* as follows:

On July 31, 2008, the El Dorado Police Department executed a search warrant at 1020 Craig Street after conducting two controlled drug buys at that location using a confidential informant. In executing the warrant, the police focused first on apprehending the people in the house. The police located [Carter] in a bathroom connected to the southwest bedroom of the home near the toilet. Several other people were present in the southwest bedroom, but [Carter] was the only person found in the bathroom. [Loggins was found at the doorway between the bathroom and the southwest bedroom.] When [Carter] was searched incident to arrest, $500 was recovered from his person that matched the serial numbers of the buy money the informant had been given the previous day to purchase drugs. [When Loggins was searched, $500 was also recovered from his person that matched the serial numbers of the buy money given to the informant earlier that same day.]

The police then performed a full search of the home and found: (1) a 9 mm handgun in the grass approximately ten feet from the southwest corner of the residence near an open window to the southwest bedroom; (2) a box of 9 mm ammunition and three loose 9 mm rounds in a cabinet in the kitchen; (3) two large blocks of crack cocaine in the hallway of the home leading to the bedrooms; (4) a 9 mm handgun on the floor of the closet off the hallway; (5) two small walkie talkies, switched to the same channel, on a chair in a room north of the kitchen; (6) a plate containing several rocks of crack cocaine under the sofa in the living room; (7) on a table near the east door, an open box of plastic baggies, three bags of marijuana, a bag of crack cocaine, a set of digital scales, a ledger list of names and dollar amounts, and three dry cleaners' receipts bearing [Carter's] name; (8) a video surveillance system connected to a flat-screen television directed to observe the outside of the home; (9) two large chunks of crack cocaine and a crack pipe in the southwest bedroom; and (10) a baggie containing crack cocaine in the bottom of the toilet bowl in the bathroom where [Carter] was apprehended.

At trial, the confidential informant testified that he had purchased drugs from [Carter] on July 30, 2008, [and from Loggins on July 31, 2008,] in cooperation with the El Dorado Police Department in exchange for a reduction of his own drug-possession charges. A forensic chemist from the state crime lab testified to the tests she performed on the over fifty-eight grams of crack cocaine and thirteen grams of marijuana that was found in the home. Additionally, Peggy Meeks testified that she owned the home at 1020 Craig Street and had rented it to [Carter]. Meeks stated that although [Carter] gave her the money, he asked that the rental agreement be in his sister's name, which Meeks remembered as Rolanda Loggins.

Douglas Henry testified that he was the "door man" at 1020 Craig Street, patting down people who came in the house to check for weapons or wires. He stated that he bought drugs from [Carter and Loggins] at the home. Henry said that he saw people buy drugs from [Carter and Loggins] in late July 2008, including the confidential informant. Henry stated that he was at

the house when the police raided it. Just before the police entered the home, he stated that he saw [Carter] with drugs and a handgun [and Loggins with a handgun]. He testified that it was normal for [Carter and Loggins] to carry a gun. Henry admitted his testimony was in exchange for a plea agreement.

[Carter] testified in his own defense, claiming that he was innocent of the charges against him. He denied renting the house at 1020 Craig Street and stated that Rolanda Loggins was his co-defendant's sister. He admitted being in the house on the day of the raid and knowing it was a "crack house," but denied being there for the purpose of buying or selling drugs. He stated that he went to the house to "shoot dice" and "smoke weed" and that he had never seen anyone "smoke crack" at the home. He stated that he was in the "front room" playing a video game when the police came in and that he ran to a back bedroom.

*Carter*, 2010 Ark. 293, at 1–4, 367 S.W.3d 544, 545–47.

Loggins also testified in his own defense, likewise denying that he ever sold drugs out of the house at 1020 Craig Street. He admitted to being in the house when it was raided, but stated only that he was there to gamble and shoot dice. He explained that the informant was there making crazy bets and not getting upset about losing money, and that is how Loggins ended up with the buy money in his pocket.

The sole point on appeal is a challenge to the sufficiency of the evidence. Loggins timely moved for a directed verdict on each of the five counts on the specific grounds that the State had failed to prove actual or constructive possession. The trial court considered each motion carefully and denied each one, although the court did agree to give lesser-included instructions for the charges related to the marijuana and crack-cocaine possessions.

This court treats a motion for directed verdict as a challenge to the sufficiency of the evidence. *Fernandez v. State*, 2010 Ark. 148, 362 S.W.3d 905. The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* Evidence is substantial if it is of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture. *Id.* When a criminal defendant challenges on appeal the sufficiency of the evidence convicting him, we view the evidence in the light most favorable to the State, considering only that evidence that supports the verdict. *Id.* On appeal, this court does not weigh the evidence presented at trial, as that is a matter for the factfinder; nor do we assess the credibility of the witnesses. *Id.*

Although circumstantial evidence may provide a basis to support a conviction, it must be consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Morgan v. State*, 2009 Ark. 257, 308 S.W.3d 147. Whether the evidence excludes every other hypothesis is left to the jury to decide. *Id.* The credibility of witnesses is an issue for the jury and not the court. *Id.* The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id.*

It is not necessary for the State to prove that an accused physically held the contraband, as possession of contraband can be proven by constructive possession, which is the control or right to control the contraband. *Tubbs v. State*, 370 Ark. 47, 257 S.W.3d 47 (2007). Con-

structive possession can be implied where the contraband is found in a place immediately and exclusively accessible to the defendant and subject to his control. *Id.* Where there is joint occupancy of the premises where contraband is found, some additional factors must be present linking the accused to the contraband. *Morgan*, 2009 Ark. 257, 308 S.W.3d 147. Those additional factors include (1) that the accused exercised care, control, or management over the contraband; and (2) that the accused knew the matter possessed was contraband. *Id.* This control and knowledge can be inferred from the circumstances, such as the proximity of the contraband to the accused, the fact that it is in plain view, and the ownership of the property where the contraband is found. *Id.* In addition, an accused's suspicious behavior coupled with proximity to the contraband is clearly indicative of possession. *Tubbs*, 370 Ark. 47, 257 S.W.3d 47.

On appeal, Loggins points out that, at the time the search warrant was executed, he was not in actual possession of any crack cocaine, marijuana, drug paraphernalia, or firearms; therefore, he argues that the State was required to prove his constructive possession. Loggins maintains that the State failed to prove that the contraband was subject to his dominion and control or that it was found in an area within his reach or immediately accessible to him. Loggins points out that numerous other persons had access to the contraband and were found in much closer proximity to it at the time the warrant was executed. He further maintains that there was no evidence that he owned or controlled the premises.

▮ ₆We view the following evidence in the light most favorable to the State. Johnny Tubbs, the confidential informant, testified that, through a controlled buy, he purchased crack cocaine from Loggins on

the day the search warrant was executed. Police found the money used in the control buy on Loggins's person when he was arrested. Henry, who conducted security checks at the door in exchange for drugs, testified that he understood the house to be Loggins and Carter's "[b]ecause they rented it. It was whatever they said." Just prior to the execution of the warrant, Loggins was in the living room of the house. Officer Phillips testified that Loggins resisted police entry into the bathroom where crack cocaine was found in the toilet. During the search, police found in plain view throughout the house large amounts of crack cocaine as well as marijuana and various ledgers and paraphernalia used for packaging smaller amounts of the drugs for sale. The firearms were found in plain view in the hall closet and outside the window of the southwest bedroom.

That the firearms, the controlled substances, and the paraphernalia were found in plain view and in many rooms throughout the house—including the living room where Loggins had been just prior to the search, as well as the hallway where Loggins was first seen and the bedroom where Loggins was eventually apprehended—are all circumstances from which a jury could infer that Loggins had control or the right to control the contraband and that he knew it was contraband. In addition, that Loggins resisted police entry into the bathroom where Carter was found standing over the crack cocaine in the toilet, amounts to suspicious behavior in close proximity to contraband and constitutes circumstances from which a jury ₇could infer Loggins exercised control of the contraband and knew it was contraband. Accordingly, we conclude that the foregoing evidence constitutes substantial evidence of Loggins's constructive possession.

In reaching this conclusion, we are aware of Loggins's argument, with respect to the charge of maintaining a drug premises, that there was no competent evidence that he had a right to exercise any control over the house because there was no evidence that he was the lessee or that he paid rent or utilities, that he ever received mail there, or that he ever stayed in the house on a regular basis. This argument is simply without merit, however. Arkansas Code Annotated section 5–64–402 (Supp.2009) provides that it is unlawful for any person to knowingly keep or maintain any dwelling that is resorted to by a person for the purpose of using or obtaining a controlled substance. The State presented evidence that Loggins sold controlled substances from the house and allowed others to use controlled substances in the house. The State also presented evidence that controlled substances, paraphernalia, and firearms were stored in the house and that the house had communication radios, a security camera, and guarded entry. Henry testified that Carter and Loggins rented the house and sold drugs at the house. At least one officer testified that the police had information that Carter and Loggins were in control of the house. The owner of the house testified that she rented it to Carter pursuant to his request to rent it in the name of Loggins's sister Rolanda Loggins. These are all circumstances from which the jury could infer that Loggins knowingly maintained the house for the purpose of using and obtaining controlled substances.

Finally, in reaching our conclusion, we note Loggins's contention that the only evidence tending to connect him with a firearm was the testimony of "codefendant Robert [sic] Henry, who received a sweet plea deal from the prosecution in exchange for his testimony." Without any citation to authority, Loggins then states in his brief that "[t]he law has been long established that Appellant cannot be convicted on the testimony of a co-defendant without independent proof of the crime charged." We note that Henry's first name is Douglas, and he was not Loggins's codefendant, although he may arguably have been considered Loggins's accomplice. The abstract does not reveal, however, that Loggins ever requested that the circuit court declare Henry to be an accomplice as a matter of law or that the issue of Henry's status as an accomplice be submitted to the jury for its determination. Thus, Loggins has not carried his burden of proving that Henry was an accomplice whose testimony required corroboration. *See Taylor v. State,* 2010 Ark. 372, 372 S.W.3d 769. Accordingly, we do not consider this aspect of Loggins's argument any further. We do reiterate, however, that one officer found one of the 9 mm handguns in the yard outside the broken window of the southwest bedroom, which is where Loggins was eventually apprehended. One officer testified that the gun was visible about twelve feet from the window and was in good condition. The other 9 mm handgun was found in plain view in the hall closet, which is near where Loggins initially encountered and resisted the officers. Another officer testified that, from the hallway, he could see the gun lying in the closet. This constitutes substantial evidence from which the jury could infer Loggins's constructive possession of either or both of the handguns found during the search.

For the aforementioned reasons, we are satisfied that even though there were several persons present when Loggins was arrested, there was substantial evidence from which the jury could find Loggins's constructive possession of the contraband and the premises. Accordingly, we affirm the judgment of all Loggins's convictions.

In compliance with Ark. Sup. Ct. R. 4–3(i) (2010), we have reviewed the record for all objections, motions, and requests made by either party that were decided adversely to appellant and find no prejudicial error.

Affirmed.