
# ARKANSAS COURT OF APPEALS

DIVISION I
No. CR–15–340

| | |
|---|---|
| | **Opinion Delivered** December 16, 2015 |
| FREDDIE L. SHARP III | |
| APPELLANT | APPEAL FROM THE MISSISSIPPI COUNTY CIRCUIT COURT, CHICKASAWBA DISTRICT [NO. CR-2014-46] |
| V. | |
| | HONORABLE CINDY THYER, JUDGE |
| STATE OF ARKANSAS | |
| APPELLEE | AFFIRMED |

## M. MICHAEL KINARD, Judge

Freddie L. Sharp III was tried by a jury and convicted of rape, for which he was sentenced to twenty-five years in the Arkansas Department of Correction. On appeal, he contends that the trial court erred in denying his motion for a directed verdict of acquittal; in refusing to allow introduction of evidence that another person had made sexual advances on the victim; in denying him allegedly exculpatory materials held by the State; in denying him access to the victim's file at the Arkansas State Crime Laboratory; in not allowing him to review reports of child abuse involving the victim, and investigatory records associated with those reports, held by the Arkansas Department of Human Services; and in denying his motions for a continuance. We affirm.

In the early evening hours of August 27, 2013, it was discovered that eleven-year-old J.W. was missing. After an extensive search in her rural Mississippi County community,

J.W.'s body was found the next morning, face-down in a ditch filled with eighteen inches of water. It was later determined that the victim had been strangled to the point of helplessness, with the ultimate cause of death being drowning. A local teenager, Chris Sowell, was arrested and charged in circuit court with J.W.'s murder. Investigation at the State Crime Lab, however, disclosed sperm and other seminal fluid on and in the victim, but none of it could be linked to Sowell; in fact, he was excluded as a source of the material. Police obtained DNA samples from several other men in the community, including appellant, who was a neighbor of J.W., and sent those samples to the crime lab for comparison. All but appellant were excluded as the source. The sperm cell found on the victim's outer labia matched appellant's personal DNA profile, and another component part of semen found inside the victim's mouth and vaginal canal (a protein known as P30) matched the genetic markers shared by appellant and the male relatives in his paternal lineage. Appellant was arrested for J.W.'s rape, charged in a different division of circuit court from Sowell, and ultimately convicted of the crime.

## I. *Sufficiency of the Evidence*

Appellant first contends that the trial court erred in denying his motion for a directed verdict. Specifically, he argues that the State presented insufficient evidence to establish either the penetration element of rape or that appellant had the opportunity to have committed the offense. We disagree.

As is pertinent here, a person commits the offense of rape if he engages in sexual intercourse or deviate sexual activity with another person who is less than fourteen years of

age. Ark. Code Ann. § 5-14-103(a)(3)(A) (Repl. 2013). "Sexual intercourse" means penetration, however slight, of the labia majora by a penis. Ark. Code Ann. § 5-14-101(11) (Repl. 2013). "Deviate sexual activity" means, in part, any act of sexual gratification involving the penetration of the anus or mouth of a person by the penis of another person. Ark. Code Ann. § 5-14-101(1)(A).

A motion for a directed verdict is a challenge to the sufficiency of the evidence. *Fernandez v. State*, 2010 Ark. 148, 362 S.W.3d 905. When sufficiency is challenged on appeal from a criminal conviction, we consider only that proof that tends to support the conviction, and we view that proof and all reasonable inferences deducible therefrom in the light most favorable to the State. *Id*. We will affirm if the finding of guilt is supported by substantial evidence. *Id*. Substantial evidence is that which is of sufficient force and character to compel a conclusion one way or the other without requiring resort to speculation or conjecture. *Id*. The weight of the evidence and the credibility of the witnesses are matters for the jury, not this court. *Means v. State*, 2015 Ark. App. 643, ___ S.W.3d ___. Circumstantial evidence may constitute substantial evidence. *Smith v. State*, 2010 Ark. App. 135, 374 S.W.3d 124. To be substantial, circumstantial evidence must exclude every reasonable hypothesis other than the accused's guilt. *Id*. However, the question of whether the circumstantial evidence excludes every reasonable hypothesis consistent with innocence is for the jury to decide. *Id*. On review, the appellate court determines whether the jury had to resort to speculation and conjecture to reach its verdict. *Fernandez*, *supra*.

SLIP OPINION

Appellant's argument that insufficient evidence of penetration was presented is without merit. "[P]enetration can be shown by circumstantial evidence, and if that evidence gives rise to more than a mere suspicion, and the inference that might reasonably have been deduced from it would leave little room for doubt, that is sufficient." *Fernandez*, 2010 Ark. 148, at 8, 362 S.W.3d at 909 (citing *Young v. State*, 374 Ark. 350, 288 S.W.3d 221 (2008)). In *Fernandez*, the supreme court held that the presence of P30 inside the anus of the victim constituted substantial evidence that penetration by a penis had occurred. Here, we have evidence of P30, a component of semen, inside the victim's mouth and vaginal canal. As in *Fernandez*, the P30 was matched to either appellant or some male who shared appellant's paternal lineage. Moreover, there is also in this case proof that a sperm cell was found on the victim's outer labia, further suggesting recent sexual contact, and that sperm matched appellant's personal DNA profile "within all scientific certainty." Appellant theorized that the P30 may have come from his urine and traveled into the victim's mouth and vaginal canal when, on the day in question, appellant urinated into the ditch where the body was later found. Even appellant's own expert witness, however, opined that such would not be possible. We conclude that the jury's finding of penetration is supported by substantial evidence.

Appellant also argues that there is no substantial evidence that he had the opportunity to commit the rape. His argument is based on a time line that he insists demonstrates that his whereabouts were accounted for during the time that the crime could have occurred. However, appellant's version of his whereabouts between 4:30 p.m. and sometime after 9:00

p.m. on the day in question depends on the testimony of appellant, his wife, and his nine-year-old daughter. Of course, the jury did not have to believe the testimony of any witness, much less that of appellant and his immediate family. *See Fernandez*, *supra*. Moreover, there was evidence that directly contradicted certain aspects of the testimony given by appellant and his family members regarding appellant's asserted time line—for example, the victim's father testified that he spoke to appellant around 6:30 p.m. and that appellant was alone in his Jeep; appellant, on the other hand, claimed that he was with his three children at that time. Appellant's assertion of his lack of opportunity to commit the crime was clearly a matter of credibility for the jury to determine. We find no error in the denial of the motion for a directed verdict.

## II. *Hearsay*

Appellant next contends that the trial court erred in refusing to admit the testimony of a neighbor that the victim had confided to the neighbor that, a few months earlier, Chris Sowell had made the victim uncomfortable on the school bus by touching her in an arguably sexual manner. The State objected because the proffered evidence contained hearsay. Appellant argues that the evidence was admissible under either of two hearsay exceptions found in Arkansas Rule of Evidence 804:

> (b) *Hearsay Exceptions*. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
> . . . .
>
> (5) *Other Exceptions*. A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (i) the statement is offered as evidence of a material fact; (ii) the

statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (iii) the general purposes of these rules and the interests of justice will best be served by admission of the statements into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

. . . .

(7) *Child hearsay in criminal cases.* A statement made by a child under the age of ten (10) years concerning any type of sexual offense against that child, where the Confrontation Clause of the Sixth Amendment of the United States is applicable, provided:

(A) The trial court conducts a hearing outside the presence of the jury, and, with the evidentiary presumption that the statement is unreliable and inadmissible, finds that the statement offered possesses sufficient guarantees of trustworthiness that the truthfulness of the child's statement is so clear from the surrounding circumstances that the test of cross-examination would be of marginal utility.

Appellant's argument regarding Rule 804(b)(7) is clearly unavailing. First, we cannot determine that appellant argued this exception to the trial court, and he cannot raise the issue for the first time on appeal. *See Lacy v. State*, 2010 Ark. 388, at 17–18, 377 S.W.3d 227, 238. In any event, by its own terms, that hearsay exception is limited to out-of-court statements made by a child under the age of ten years. Here, the victim was eleven years old at the time of her death, and the proffered witness testified that the victim made the statement to him within approximately four months of her death. She could not have been "under the age of ten" at the time of her alleged statement.

Nor do we find reversible error in the trial court's decision under Rule 804(b)(5). A trial court's decision on the admission of evidence will not be reversed in the absence of an



abuse of discretion. *Ross v. State*, 2015 Ark. App. 613, ___ S.W.3d ___. Among other things, Rule 804(b)(5) conditions admission of hearsay on its having guarantees of trustworthiness equivalent to those of established exceptions and on the trial court's determination that the statement is offered as evidence of a material fact. Here, according to the proffer, the child stated that Sowell had put his finger in a hole in her jeans on her upper leg and that "it creeped [her] out." She was not upset when she made the statement to the witness, and she gave no further details. The witness took no action, such as informing the child's parents or school or law enforcement authorities. The trial court thoughtfully considered the proffer and concluded that the statement did not carry substantial guarantees of trustworthiness. Moreover, there would appear to be little, if any, probative value to the evidence. The trial court could have concluded that whether Sowell may have made sexual advances on the child was not significantly material to the question of whether the child was raped on the day in question and, if so, whether it was appellant who raped her. This is particularly so here, where the only proof of rape consisted of seminal fluid and sperm found in and on the victim's body and where, even according to appellant's own expert witness, DNA testing completely excluded Sowell as the source. Finally, we note that, earlier in the trial, a police officer testified that the police had information that Sowell had made "sexual advances" on the victim on the school bus and that his behavior had made her uncomfortable. The proffered testimony would have added little, if anything, to the officer's testimony. We cannot say that the trial court abused its considerable discretion in refusing to admit the neighbor's proffered testimony or, in any event, that appellant suffered



any real prejudice as a result of its exclusion in light of the admission of the police officer's similar testimony.

### III.  *Denial of* Brady *Materials*

Appellant next contends that he was denied discovery of exculpatory material by the State in violation of the due-process principle announced in *Brady v. Maryland*, 373 U.S. 83 (1969).  Specifically, appellant sought access to copies of all of the materials in the files related to the murder case that was pending against Sowell.  As stated, the murder case against Sowell and the rape charge against appellant were proceeding in separate divisions of circuit court and were assigned to different judges.  Because pretrial publicity was proving to be a problem, both judges entered "gag" orders prohibiting law enforcement officials, crime lab employees, parties, and attorneys from releasing any extra-judicial statements or interviews relating to the trials, parties, or issues in the trials.  The judge in the Sowell case also drafted a protective order, referencing the gag order and allowing disclosure of the Sowell files to appellant Sharp and his attorney provided that they first sign the protective order, thereby acknowledging the terms of the protective order and the fact that violation of it could result in a contempt citation.  The judge in appellant's case then "adopted" the protective order as her own in appellant's rape case.  Appellant's counsel refused to sign the order.  On appeal, appellant contends that he was denied the Sowell files and, thereby, denied exculpatory materials.

We do not completely understand appellant's reasons for not signing the protective order.  Had he done so, he would have received the files.  He insists that signing the order

would have constituted "entering an appearance" in the murder case pending against Sowell and would have somehow tainted appellant by "publishing the fact that [appellant's] case was related to Sowell's case or that he was a co-defendant of Sowell or that he was implicated in the murder of J.W." However, one enters an "appearance" when he comes into court as a party or interested person or as a lawyer for a party or interested person. *Black's Law Dictionary* 118 (10th ed. 2014). All appellant was asked to do, on the other hand, was acknowledge the protective order and the potential consequences for its violation. Rule 19.4 of the Arkansas Rules of Criminal Procedure, entitled "Protective Orders," provides as follows:

> Upon a showing of cause, the court may at any time order that specified disclosures be restricted or deferred, or make such other order as is appropriate, provided that all material and information to which a party is entitled must be disclosed in time to permit his counsel to make beneficial use thereof.

The court on more than one occasion even suggested that appellant's signing of the order could be done under seal so that the public would not be aware that he had done so. It appears to us that the trial court correctly determined that appellant refused to comply with a simple and authorized condition and that his refusal was the only reason that he did not have access to the requested information. We find no reversible error.

IV. *Denial of Access to Crime Lab File on Victim*

Appellant's argument that he was erroneously denied information from the victim's file at the State Crime Lab is without merit for the same reasons discussed in Point III above. The only impediment to his access to the requested information was his unreasonable refusal to sign the protective order.

9



## V. *Denial of Access to Child-Abuse Reports*

Appellant also argues that the trial court erred in refusing his request to review reports and records held by the Arkansas Department of Human Services (DHS) regarding allegations that J.W.'s parents had abused her. After requiring that DHS be provided notice and an opportunity to be heard on whether the information should be released, the trial court then held a hearing. Counsel for DHS stated that it had received reports accusing J.W.'s father of educational and medical neglect and accusing the child's mother of inflicting cuts and bruises. There were no reports of sexual abuse and no reports implicating either appellant or Chris Sowell in any abuse, and the reports against J.W.'s parents were deemed by investigators to be "unsubstantiated." The trial court took the matter under advisement, stating that it would receive the DHS files in camera and decide whether any of the material was relevant and should be turned over to appellant. The court agreed to make any information deemed irrelevant a part of the record on appeal.

Appellant's argument is unavailing. First, appellant's contention that the trial judge "determined the files should not be released as it was her opinion there was nothing in those files that were useful to [appellant]" is unsupported by the record. Appellant cites us to one page in the abstract and two orders in the addendum for the quoted argument. However, those portions of the record reflect that the trial court was going to review the reports in camera and decide their relevance. We have been pointed to nothing in the record showing that the matter was ever raised again by appellant. And, despite the trial court's stated willingness to include in the record on appeal any information that might be deemed

irrelevant, we find no such information in this record and no objection below to its absence. Therefore, we have before us no final ruling on appellant's motion and no proffer of the reports in question for this court to review. One must obtain a ruling to preserve an issue for appeal, *Richards v. State*, 2009 Ark. App. 721, and must also proffer evidence for review before we can determine whether one has suffered any prejudice. *Brown v. State*, 368 Ark. 344, 246 S.W.3d 414 (2007). In any event, appellant's argument in the trial court was that "educational" and "medical" neglect might somehow be probative of who raped the victim. No effort is made by appellant on appeal to connect those dots or to otherwise demonstrate how such information would fall into any of the categories of discoverable material under Ark. R. Crim. P. 17.1.

## VI. *Denial of Motions for Continuance*

Appellant's final contention is that the trial court erred in denying his motions for continuance. Specifically, he argues that his trial should have been continued until after disposition of the murder case against Sowell and disposition of the contempt charge against appellant's attorney for allegedly violating the protective order.[1] Again, we see no reversible error.

A continuance should be granted only upon a showing of good cause and only for so long as is necessary. Ark. R. Crim. P. 27.3. A motion for continuance is addressed to the sound discretion of the trial court, whose decision will not be reversed on appeal absent a

---

[1] The motion seeking to have counsel held in contempt accused him of going to the crime lab and knowingly seeking from lab employees information covered by the protective order without having first signed the order.

11

clear abuse of that discretion. *Elliott v. State*, 2012 Ark. App. 126, 389 S.W.3d 100. The appellant bears the burden of establishing not only that the trial court abused its discretion in denying the motion for continuance, but he must also show prejudice that amounts to a denial of justice. *Id.*

Appellant's argument that his trial should have been continued until after disposition of the Sowell murder charge was based on appellant's insistence that such was the only way for him to have access to the Sowell file. He argues that, had his case been continued, he could have had access to the Sowell file because, upon disposition of the murder case, it would have ceased to be "investigatory." However, the State made it clear that it planned to try appellant before Sowell regardless of whether appellant was granted a continuance, and appellant cites nothing to support the proposition that the trial court could force the State to alter those plans. Moreover, as discussed in Points III and IV above, the Sowell file was already available to appellant many months before his trial. All he had to do to secure the file was sign the protective order, which requirement sought nothing more than acknowledgment by appellant and his attorney of the gag order and the possible consequences for violating it. We find no abuse of discretion in the court's denial of a continuance on this basis.

Nor can we conclude that the trial court abused its discretion in denying appellant's motion to continue the trial until after his attorney's contempt hearing. The motion was based on appellant's insistence that having the contempt matter "hanging over the head of [his] counsel as he questioned witnesses and put on evidence," and worrying whether "those

12

questions or that evidence would subject him to further contempt charges," constituted good cause for a continuance. However, appellant did not make any proffer to the trial court, either when the continuance motion was made or in his motion for a new trial based on this argument, regarding what he would have done differently at the trial but for the contempt charge. Nor has he provided any specific argument in this regard on appeal. Without such information, we cannot determine that appellant suffered any prejudice. *See Ferrell v. State*, 325 Ark. 455, 462, 929 S.W.2d 697, 702–03 (1996). Moreover, it appears that the protective order dealt with statements to, or interviews with, media outlets and dissemination of materials through public communication or social media. It does not seem particularly reasonable to us that the order could be read to prohibit appellant from presenting relevant evidence in a court of law. In any event, counsel surely could have sought a ruling from the court, without reasonable worry about being held in contempt, before asking any questions or introducing any evidence that he deemed potentially troublesome.

Affirmed.

GLADWIN, C.J., and ABRAMSON, J., agree.

*Chet Dunlap*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Kristen C. Green*, Ass't Att'y Gen., for appellee.

SLIP OPINION