RAYMOND R. ABRAMSON, Judge
Appellant Jared Harper was convicted by a Miller County Circuit Court jury of rape, second-degree sexual assault, and sexual indecency with a child. The judgment entered on April 12, 2018, reflects that Harper was sentenced to an aggregate term of 360 months' imprisonment.[1] On appeal, Harper argues that the circuit court erred by (1) permitting Missy Davidson to testify as an expert witness about victim recantation, (2) denying his motion for a continuance, and (3) denying his motion to produce the prosecutor's notes from an interview with the victim. For the following reasons, we affirm in part and remand for further proceedings.
In March 2015, Harper's eleven-year-old stepdaughter, K.S., disclosed that Harper had been sexually abusing her. On June 26, 2015, the State filed a criminal information charging Harper with rape, second-degree sexual assault, and sexual indecency with a child.
K.S., who was fourteen years old at the time of trial, testified that Harper had sexually abused her from ages seven to ten. K.S. stated that the first time was after she got out of the shower one day. Harper told her to leave her underwear off. Then he "rolled his finger around [her] private part" but did not put his finger inside her vagina. Other times when K.S. and Harper watched movies together on the couch, he touched her "private parts" with his fingers. K.S. testified that Harper attempted to insert his finger into her vagina, but "he never really got it in."
*599 Harper would stop the inappropriate touching after K.S. told him that it hurt.
K.S. explained that Harper's fingers "went past just the outside." Besides touching K.S. with his fingers, Harper also licked K.S.'s vagina several times. Harper "tried to get [his penis] in [her] hole but it hurt too much so he couldn't." K.S. stated that only the tip of Harper's penis went inside her. K.S. testified that on one occasion when Harper was driving to E-Z Mart, he made her put her mouth on his penis. Harper told K.S. that if she put her mouth on his penis, he would buy her something from E-Z Mart.
K.S. described Harper's penis and semen in specific detail. She testified that she did not tell her mother about the abuse for fear of hurting her mother. She said her mother "was in love with [Harper]" and needed him financially to pay the bills at home. K.S. also testified that she still loves Harper and wants his love in return. She believed that letting Harper sexually abuse her would make him love her.
Missy Davidson interviewed K.S. about the sexual-abuse allegations at the Children's Advocacy Center (CAC) in Texarkana on March 27, 2015. Davidson is the CAC program director and also a licensed professional counselor and a forensic interviewer. K.S. told Davidson about some of the sexual abuse, but not all of it. At that point, Harper was no longer living in the house, and K.S. testified that she missed him and wanted him to come back home. She told Davidson that her family had "lost like everything" and that "[a]ll the money was gone." K.S. testified that she "felt guilty" and "responsible" for hurting her mom and her brothers.
In June 2015, K.S.'s mother took K.S. to meet with Randal Harris, an investigator hired by the defense. K.S. testified that she told Harris the sexual abuse did not happen because she "wanted [her] family back." A few weeks later, K.S. met with Davidson at the CAC and told her that the sexual-abuse allegations were not true. K.S. also wrote a three-page letter in late 2016 stating that she made up the sexual-abuse allegations against Harper because of the problems going on in her family.
Then in 2017, K.S. told Davidson that the allegations were true. She testified that at that time she did it because it had been a couple of years, the allegations were "true," and she was a "little older." K.S. testified that after she made the sexual-abuse allegations against Harper, she and her mom did not get along. But after she recanted, their relationship was "great."
Over Harper's objections at trial, Missy Davidson was qualified as an expert witness in forensic interviews. The circuit court allowed Davidson to testify about the phenomenon of recantation, but not specifically about K.S. or Harper. Davidson explained generally how she conducted child interviews at the CAC. When interviewing a child, Davidson asked "neutral open ended non-leading questions." Davidson looked for "sensory details" about what the child saw, heard, felt, tasted, and smelled.
Davidson also explained the five stages of disclosure that a child typically goes through when reporting abuse. Stage one is "denial" in which a child may deny the sexual abuse altogether or deny only portions of it. Stage two involves the "tentative" stage in which the child may give a few details of the abuse but minimize it. The third stage of disclosure is "active" in which the child may go into much more detail about the abuse. "Recantation" is the fourth stage, with a child recanting and saying the abuse never happened. Finally, the last stage is "reaffirmation" in which the child once again confirms the abuse.
*600 Davidson testified that recantation is common. She also explained that some of the reasons for recantation are that the child loves the abuser and wants things to go back to the way they were before disclosure of the abuse. Davidson did not testify about the victim or the allegations in this case.
On appeal, Harper argues that the circuit court should not have permitted the State to present "profile and bolstering evidence to attempt to explain or excuse the accuser's changing stories." Specifically, Harper maintains that it was improper profile evidence, that Davidson should not have been permitted to testify as an expert, and that it was improper bolstering of the "accuser's testimony."
The standard of review on admissibility of expert testimony is abuse of discretion. Johninson v. State , 317 Ark. 431, 878 S.W.2d 727 (1994). Because the admission of testimony is a matter within the circuit court's sound discretion, we will not reverse that decision on appeal absent a manifest abuse of discretion and a showing of prejudice to the defendant. E.g. , Hajek-McClure v. State , 2014 Ark. App. 690, at 3, 450 S.W.3d 259, 261. Abuse of discretion is a high threshold that requires that the circuit court act improvidently, thoughtlessly, or without due consideration. E.g. , id. at 3, 450 S.W.3d at 261-62. The general test for admissibility of expert testimony is whether the testimony will aid the trier of fact in understanding the evidence or in determining a fact in issue. E.g. , id. at 3, 450 S.W.3d at 262.
Throughout the trial and again on appeal, Harper argues that Davidson's testimony was improper evidence because she testified about "a profile of persons who accuse, recant and then reaccuse." He further alleged that her testimony was an attempt to bolster K.S.'s credibility. We disagree.
Davidson did not offer "profile" evidence about the type of person who reports sexual abuse, recants, and then reaffirms. Nor did she attempt to "bolster" K.S.'s testimony. Davidson never mentioned K.S.'s name during her entire testimony. Davidson, instead, testified generally about how child-forensic interviews are conducted, the typical five stages of disclosure, and the reasons why a child may recant. Davidson did not attempt to explain why K.S. recanted or that K.S.'s sexual-abuse allegations were credible or that K.S. fit the "profile" of a person who would recant abuse allegations.
Our court has expressly held that expert witnesses may testify generally about forensic interviews and recantation. See Sweeten v. State , 2018 Ark. App. 590, 564 S.W.3d 575 ; see also Hill v. State , 337 Ark. 219, 225, 988 S.W.2d 487, 491 (1999) (holding that the DHS caseworker's testimony about the criteria DHS used to determine whether a child's sexual-abuse allegations warranted further investigation was proper and did not bolster the victim's credibility); Davis v. State , 330 Ark. 501, 508-09, 956 S.W.2d 163, 166 (1997) (holding that the circuit court did not abuse its discretion by allowing a family-service worker with DHS to give expert testimony that it was not unusual for child sexual-abuse victims to recant).
In a December 5, 2018 decision, our court specifically addressed Missy Davidson and her expert testimony in Sweeten , 2018 Ark. App. 590, 564 S.W.3d 575 :
The supreme court has said that it is erroneous for the circuit court to permit an expert, in effect, to testify that the victim of a crime is telling the truth. Hill v. State , 337 Ark. 219, 988 S.W.2d 487 (1999). This court reversed in Cox v. State , 93 Ark. App. 419, 220 S.W.3d 231 (2005), because the forensic interviewer *601 testified repeatedly that she believed the victim to be highly credible. We also reversed in Purdie v. State , 2010 Ark. App. 658, 379 S.W.3d 541, because the interviewer reviewed the videotape of the interview with the jury and testified that she did not observe anything that led her to believe that the victim had been coached or that she was fabricating. Here, however, the videos of the interviews were not played for the jury, and Davidson did not testify about the victims or the allegations in this case. Davidson's testimony was more akin to that in Hill , supra , in which a witness testified about the criteria used by the Department of Human Services in evaluating a child's allegation of sexual abuse and the guidelines employed to determine whether the allegations warranted an investigation. The circuit court overruled Hill's objection, finding that the jury was entitled to understand the State's interview and investigation techniques, and the supreme court found no error in permitting the testimony. Based on similar testimony here, we hold that there was no abuse of discretion.
Id. at 5, 564 S.W.3d at 578-79.
Such is the case here. Davidson gave generalized testimony about forensic interviews and recantation and did not testify specifically about K.S. Such testimony is proper expert-witness testimony, and we cannot say that the circuit court abused its discretion in allowing Missy Davidson to testify as an expert.
Harper's second appellate point is that the circuit court erred in denying his motion for continuance. On March 21, 2018, two weeks before the April trial date, Harper filed an emergency motion for supplemental discovery requesting the search warrants the State issued to seize the cell phone of Regina Harper, K.S.'s mother. Six days later, on March 27, 2018, Harper filed a motion for a continuance and a supplement to his motion for a continuance. Harper alleged that the State had obtained the contents of his wife's cell phone from two search warrants issued on March 20, 2018. Within the week, the State gave him a thumb drive containing the contents of the cell phone. He was unable to access the material on the thumb drive. With the help of the Arkansas State Police, Harper gained access to the information on the thumb drive around 9:00 p.m. on March 27, 2018. Harper stated that "there were over 100,000 files to be downloaded from the thumb drive, at least 35 of which were audio recordings, some of considerable length." He alleged that due to the amount of information on the thumb drive, he would be "unable to make meaningful and beneficial use" of the information in the "three business days before trial."
The circuit court held a hearing on Harper's motion for continuance. After hearing from both sides, the circuit court denied the motion and held that the information from the cell phone was not grounds for a continuance. On appeal, Harper claims he was prejudiced by this denial because he was unable to make beneficial use of the contents.
A circuit court shall grant a motion for continuance only upon a showing of good cause and only for so long as is necessary. Thomas v. State , 370 Ark. 70, 257 S.W.3d 92 (2007). A circuit court must use sound discretion in granting or denying a motion for a continuance. E.g. , Sharp v. State , 2015 Ark. App. 718, at 11, 479 S.W.3d 568, 576. Our court will not reverse the circuit court's decision absent clear abuse of that discretion. E.g. , id. at 11-12, 479 S.W.3d at 576. On appeal, the appellant bears the burden of establishing that the circuit court abused its discretion and *602 that he suffered prejudice amounting to a denial of justice. E.g. , id. at 12, 479 S.W.3d at 576. When the prosecutor fails to provide information, the burden is on the defendant to show that the omission was sufficient to undermine confidence in the outcome of the trial. E.g. , Figueroa v. State , 2016 Ark. App. 30, at 2, 480 S.W.3d 888, 890. Harper cannot meet this burden because he did not demonstrate prejudice from the denial of his motion to continue; accordingly, we must affirm.
On appeal, Harper fails to allege specific facts as to how he was prejudiced by the denial of his motion to continue; he simply makes conclusory statements. He does not state what evidence on his wife's phone would have been beneficial to him or how that evidence would have changed his defense, his cross-examination of witnesses, or the outcome of the trial. Because Harper has not demonstrated prejudice from the denial of his motion to continue, we must affirm the circuit court's decision to deny his motion to continue. See Arnold v. State , 2018 Ark. App. 22, at 7, 540 S.W.3d 298, 302 (holding that Arnold did not demonstrate prejudice from the circuit court's denial of his motion for continuance because he "failed to point to any specific information that the continuance would have garnered that would have impacted or changed his cross-examination of [a witness]"). Although we may disagree with the circuit court's decision to deny the motion to continue here, it is well settled that we will not reverse the circuit court's denial of a motion for continuance unless appellant demonstrates that the circuit court abused its discretion and proves prejudice that amounts to a denial of justice. See Hill v. State , 2015 Ark. App. 700, at 6-7, 478 S.W.3d 225, 230. Harper does not meet his burden of showing such prejudice that a denial of justice has occurred in his case, and as such, we affirm.
Harper's third and final point on appeal is that the circuit court erred by denying his request for the prosecutor's notes from an interview with K.S. that occurred on March 6, 2017. Because this issue presents a question of law, our standard of review is de novo. Gulfco of La. v. Brantley , 2013 Ark. 367, 430 S.W.3d 7.
After making the initial allegations of sexual abuse in March of 2015, K.S. recanted on several occasions. On the evening of March 6, 2017, the Miller County prosecutor and one of her deputy prosecuting attorneys met with K.S. at the prosecutor's office. The meeting lasted roughly two hours, and K.S.'s mother sat in the lobby while K.S. talked to the lawyers. On March 10, 2017, before the first trial in June 2017, Harper had filed a motion for the prosecutor to produce, among other things, a copy of her notes from the March 6, 2017 interview with K.S. Harper alleged that during this interview, K.S. re-alleged sexual-abuse allegations against him. Harper maintained that because K.S. initially made sexual-abuse allegations against him on March 27, 2015, and then subsequently recanted those allegations,[2] he was requesting a copy of the prosecutor's notes from the March 6 interview to determine "[w]hat was said to make K.S. change her story, and what K.S. said prior to changing her story."
The circuit court conducted a hearing on Harper's motion to produce on March 13, 2017. Harper claimed that the prosecutor's notes were not work product and explained that K.S.'s "motivat[ion] to fabricate the *603 allegations" was "going to be key in this case." The prosecutor responded, explaining that K.S. came to her office on March 6, 2017, to discuss whether K.S. wanted to proceed with the allegations against Harper because she had previously recanted. The prosecutor further said that during the meeting, K.S. made no statement which would have to be disclosed to Harper. The prosecutor stated that she "did not write down verbatim what [K.S.] said." Rather, she argued, the notes were work product because they contained "opinions, observations of the child's behavior, and demeanor throughout the meeting."
The circuit court found that the prosecutor's notes were not something that had to be turned over to Harper and that they were taken in anticipation of trial. The circuit court also noted that the prosecutor had already given Harper the substance of K.S.'s interview, and it told the State to disclose to Harper any new details from K.S.'s interview that it planned on using at trial.
Before the first trial, Harper requested that the circuit court place the prosecutor's notes from her interview with K.S. under seal for appellate review. Harper also asked that the circuit court review the prosecutor's notes in camera to determine if they contained material the prosecutor was obligated to disclose under Brady v. Maryland , 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The circuit court stated that the notes were taken in preparation for trial and denied Harper's request for the court to review the notes.
After K.S.'s direct examination at the first trial, Harper once again requested the prosecutor's notes from her interview with K.S. and for the circuit court to place the notes under seal for appellate review. The circuit court denied his request and, without conducting an in camera hearing, found that the notes were not discoverable. This is troubling. Before the start of the second trial, the circuit court noted that its previous "rulings would remain in effect."
On appeal, Harper argues that the circuit court erred by denying his request for the prosecutor to disclose her notes from an interview with K.S. Harper avers that the notes potentially contained Brady material and that the prosecutor was required to disclose them. He argues that he was prejudiced by the State's failure to disclose the notes because K.S. recanted and then re-alleged sexual-abuse allegations only after meeting with the prosecutor. He further claims that the circuit court should have held an in camera hearing to review the notes and/or should have placed them under seal for appellate review. We agree.
Arkansas Code Annotated section 16-89-115(b) (Repl. 2005) provides that after a witness called by the State has testified on direct examination, the court on motion of the defendant shall order the State to produce any statement, as defined in subsection (e) of this section, of the witness in the possession of the State which relates to the subject matter as to which the witness has testified. If the entire contents of the statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his or her examination and use.
Pursuant to this statute, a "statement" means:
(1) A written statement made by the witness and signed or otherwise adopted or approved by him or her; or (2) A stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by the witness to an agent of the state and recorded contemporaneously with the making of the oral statement.
*604 Ark. Code Ann. § 16-89-115(e) (Repl. 2005) (emphasis added).
Harper relies heavily on Winfrey v. State , 293 Ark. 342, 738 S.W.2d 391 (1987), to allege that he is entitled to the notes the prosecutor took during her interview with K.S. In Winfrey , after the first victim had completed her direct testimony, Winfrey moved for the State to produce the reports that one of the prosecutor's employees made concerning his interview with the victim. Id. at 344, 738 S.W.2d at 392. The employee explained during questioning by the circuit court that his written report contained key phrases and direct quotes of what the victim said in her own words. Id. at 345-46, 738 S.W.2d at 392-93. The circuit court denied Winfrey's request for the reports because it ruled that the reports were work product. Id. at 345, 738 S.W.2d at 392. On appeal, the Arkansas Supreme Court explained that the State was obligated under what is now codified at Arkansas Code Annotated section 16-89-115(b) and (e) to give the defense any prior statement of a witness that was "substantially verbatim." Id. The high court reversed the circuit court's ruling because the employee's written report "contained a substantially verbatim, and contemporaneously made, recital of the victims' statements." Id. at 347, 738 S.W.2d at 393.
The State argues that Winfrey is in contrast to the instant case because there is no evidence that the prosecutor's notes contained direct quotes from K.S. The prosecutor stated that she "did not write down verbatim what [K.S.] said." The notes contained "opinions, observations of the child's behavior, and demeanor throughout the meeting." Consequently, the State maintains, the prosecutor's notes were not "substantially verbatim" and were not required to be disclosed to Harper under Arkansas Code Annotated section 16-89-115(b).
This case presents an unusual situation because the circuit court did not conduct an in camera review or place the notes under seal for appellate review. This leaves us with nothing to review on appeal. While the circuit court was not required to hold an in camera hearing to review the prosecutor's notes, it should--at the very least--have placed the notes under seal for appellate review.
Rule 19.6 of the Arkansas Rule of Criminal Procedure provides:
The court may permit any showing of cause in whole or in part for denial or regulation of disclosures to be made in camera. A record shall be made of such proceedings. If the court enters an order granting relief following a showing in camera, the entire record of such showing shall be sealed and preserved in the records of the court, to be made available to the appellate court in the event of an appeal.
Ark. R. Crim. P. 19.6.
We are unable to reach a decision on Harper's third point since there has been no preservation of the contested material for appellate review. Because the circuit court did not conduct an in camera hearing or place the notes under seal for our court's review, we are left with an absence of material and therefore must remand for further proceedings consistent with this opinion. We are aware that an in camera review is discretionary under Rule 19.6, but because we do not have the proper material before us in order to make a decision regarding Harper's final appellate point, we believe both the Supreme Court of the United States case, Pennsylvania v. Ritchie , 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987), and the Arkansas Supreme Court case, Taffner v. State , 2018 Ark. 99, 541 S.W.3d 430 provide guidance here.
*605 In Taffner , our supreme court, citing to Ritchie wrote:
The United States Supreme Court determined that the circuit court should have at least reviewed the file to determine the materiality of its content. The Supreme Court did not agree with Ritchie's argument that he was entitled to access to the entire file. The Court concluded that Ritchie's rights could be protected by remanding to allow the trial court to review the file to determine whether it contained information that probably would have changed the outcome of the trial. Specifically, the court held:
We therefore affirm the decision of the Pennsylvania Supreme Court to the extent it orders a remand for further proceedings. Ritchie is entitled to have the CYS file reviewed by the trial court to determine whether it contains information that probably would have changed the outcome of his trial. If it does, he must be given a new trial. If the records maintained by CYS contain no such information, or if the nondisclosure was harmless beyond a reasonable doubt, the lower court will be free to reinstate the prior conviction.
Taffner , at 436-37, (citations omitted).
We find the holdings in both Taffner and Ritchie to be persuasive regarding the case before us. In sum, we affirm the circuit court's rulings qualifying Missy Davidson as an expert and allowing her to testify as well as its decision to deny Harper's motion for a continuance. On remand, the circuit court is instructed to conduct an in camera review of the prosecutor's notes to determine if the notes were "substantially verbatim" and if, based on the circuit court's review, the notes were required to be disclosed to Harper under Arkansas Code Annotated section 16-89-115(b).
Pursuant to Taffner and Ritchie , if the notes contain "information that probably would have changed the outcome" of the trial, Harper should receive a new trial unless "the nondisclosure was harmless beyond a reasonable doubt." See Taffner v. State , 2018 Ark. 99, 541 S.W.3d 430 (quoting Pennsylvania v. Ritchie , 480 U.S. 39, 58, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987) ). If the file contains no evidence likely to change the outcome of the trial, or if the notes are not substantially verbatim of the victim's interview, or if the nondisclosure is harmless beyond a reasonable doubt, the circuit court should leave the verdicts undisturbed, as prescribed by Ritchie.
Affirmed in part; remanded for further proceedings.
Virden, J., agrees.
Hixson, J., concurs.

Harper was originally tried on June 26, 2017, but the jury was unable to reach a unanimous verdict; thus, the circuit court declared a mistrial in that case, and he was retried the following April.

K.S. recanted (1) on June 10, 2015, to investigator Randall Harris; (2) on June 24, 2015, to Missy Davidson at the Child Advocacy Center; (3) on June 26, 2015, to DHS workers and/or Miller County sheriff's deputies; and (4) in November 2016 in a three-page letter she wrote.