Cite as 2020 Ark. App. 4

# ARKANSAS COURT OF APPEALS

DIVISION I

No. CR-19-419

| | | |
|---|---|---|
| JARED HARPER | | **Opinion Delivered:** January 15, 2020 |
| | APPELLANT | |
| | | APPEAL FROM THE MILLER COUNTY CIRCUIT COURT [NO. 46CR-15-281] |
| V. | | |
| | | HONORABLE BRENT HALTOM, JUDGE |
| STATE OF ARKANSAS | | |
| | APPELLEE | |
| | | AFFIRMED |

## RAYMOND R. ABRAMSON, Judge

This case returns to us after we remanded it on March 13, 2019. In Jared Harper's direct appeal, we affirmed in part but remanded for the circuit court to conduct an in camera review of the prosecutor's notes from a March 6, 2017 interview with the alleged victim, K.S. *See Harper v. State*, 2019 Ark. App. 163, 573 S.W.3d 596. Upon review, we affirm.

We begin by providing the relevant facts and procedural history to explain our current posture. After we remanded, but prior to the issuance of the mandate, the circuit court conducted an in camera hearing and reviewed the prosecutor's notes. The circuit court entered an order on March 20, 2019, and concluded that the notes were not a substantially verbatim statement from K.S., did not contain material that required

disclosure under *Brady v. Maryland*, 373 U.S. 83 (1963), and any nondisclosure was harmless beyond a reasonable doubt. *See* Ark. Code Ann. § 16-89-115(e)(2) (Repl. 2005). The circuit court then reinstated Harper's convictions and placed the prosecutor's notes under seal.

On March 21, 2019, Harper filed a motion to vacate the circuit court's March 20, 2019 order because the mandate had not yet issued. Harper also filed a notice of appeal from that order, and the case was assigned number CR-19-419 (the present case). The mandate in the direct appeal (CR-18-556) issued on May 23, 2019.

On June 5, 2019, the circuit court granted Harper's motion and vacated its March 20, 2019 order. That same day, the circuit court entered another order again reinstating Harper's convictions. Harper then filed a notice of appeal from the June 5, 2019 order, which was pending before our court in *Harper v. State*, CR-19-566.

On July 17, 2019, prior to filing his brief, Harper filed a motion in our court seeking access to the sealed prosecutor's notes. We granted Harper "leave to review the portion of the record under seal with direction to maintain the confidentiality of the documents pursuant to Arkansas Supreme Court Administrative Order Number 19." *Harper v. State*, 2019 Ark. App. 351, at 1 (per curiam). Harper also filed a motion to consolidate this case (CR-19-419) with CR-19-566, and we granted his motion and consolidated the cases on August 21, 2019. We now turn to the merits of Harper's appeal.

Harper argues that this court should reverse his convictions based on the disclosures in the notes, or "at the very least, the court should remand for a factfinding hearing before

2

a different judge." We disagree. After conducting an in camera review, the circuit court concluded that the prosecutor's notes were not a statement as defined by Arkansas Code Annotated section 16-89-115; the notes contained no information that probably would have changed the outcome of the trial; and the nondisclosure of the notes is harmless beyond a reasonable doubt because the information in the notes was readily available through other discovery provided in the case by the State. The circuit court's June 5, 2019 order specifically stated, "Nothing new was in the notes that was not previously disclosed."

On March 10, 2017, prior to the first trial,[1] Harper filed a motion to produce, among other things, a copy of the prosecutor's notes from a March 6, 2017 interview with K.S. *Harper*, 2019 Ark. App. 163, at 9–10, 573 S.W.3d at 602. Harper alleged that during this interview, K.S. realleged sexual-abuse allegations against him. *Id.* at 10, 573 S.W.3d at 602. Harper stated that K.S. initially made sexual-abuse allegations against him on March 27, 2015. *Id.* K.S. subsequently recanted those allegations: (1) on June 10, 2015, to investigator Randall Harris; (2) on June 24, 2015, to Missy Davidson at the Child Advocacy Center; (3) on June 26, 2015, to DHS workers and/or Miller County Sheriff's deputies; and (4) in November 2016, in a three-page letter she wrote. *Id.* at 10 n.2, 573 S.W.3d at 602 n.2.

Harper sought a copy of the prosecutor's notes from the March 6, 2017 interview to determine "[w]hat was said to make K.S. change her story, and what K.S. said prior to changing her story." *Id.* at 10, 573 S.W.3d at 602. The circuit court conducted a hearing

---

[1]The first trial resulted in a mistrial due to a hung jury.

on Harper's motion to produce the notes on March 13, 2017. *Id.* Harper claimed that the prosecutor's notes were not work product and explained that K.S.'s "motivat[ion] to fabricate the allegations" was "going to be key in this case." *Id.* at 10, 573 S.W.3d at 602–03. The prosecutor responded and explained that K.S. came to her office on March 6, 2017, to discuss whether she wanted to proceed with the allegations against Harper since K.S. had previously recanted. *Id.* at 10, 573 S.W.3d at 603. The prosecutor stated that, during the two-hour interview, K.S. made no statement that would have to be disclosed to Harper. *Id.* The prosecutor stated that she "did not write down verbatim what [K.S.] said." *Id.* Rather, the notes were work product because they contained "opinions, observations of the child's behavior, and demeanor throughout the meeting." *Id.*

The circuit court agreed and held that the prosecutor's notes were not subject to disclosure and that the notes were taken in anticipation of trial. *Id.* at 11, 573 S.W.3d at 603. The circuit court also noted that the prosecutor had already provided Harper the substance of K.S.'s interview but ordered the State to disclose to Harper any new details from K.S.'s interview that it planned on using at trial. *Id.*

Harper requested that the circuit court place the prosecutor's notes from the interview with K.S. under seal for appellate review. *Id.* Harper also asked the circuit court to review the prosecutor's notes to determine whether they contained material the prosecutor was obligated to disclose under *Brady*. *Id.* The circuit court denied Harper's requests, did not review the notes, and found that the notes were taken in preparation for trial. *Id.*

4

After K.S.'s direct examination at the first trial, Harper once again requested the prosecutor's notes from the interview with K.S. and for the circuit court to place the notes under seal for appellate review. *Id.* The court denied his request and found that the notes were not discoverable. *Id.* Before the start of the second trial, the circuit court noted that its previous "rulings would remain in effect." *Id.*

On appeal, prior to the remand, Harper argued that the circuit court erred by denying his request for the prosecutor to disclose the notes from her interview with K.S. *Id.* He alleged that the notes potentially contained *Brady* material and that the prosecutor was required to disclose them. *Id.* He further claimed that the circuit court should have held an in camera hearing to review the notes and/or should have placed them under seal for appellate review. *Id.* at 12, 573 S.W.3d at 603. As noted above, we agreed and held that because the circuit court had not conducted an in camera hearing or placed the notes under seal, we were left with an absence of material to review; accordingly, we remanded for the limited purpose of addressing Harper's argument regarding the prosecutor's notes.

Arkansas Code Annotated section 16-89-115(b) (Repl. 2005) provides that after a witness called by the State has testified on direct examination, the court on motion of the defendant shall order the State to produce any statement, as defined in subsection (e) of this section, of the witness in the possession of the State that relates to the subject matter about which the witness has testified. If the entire contents of the statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his or her examination and use.

Pursuant to this statute, a "statement" includes "[a] stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a *substantially verbatim* recital of an oral statement made by the witness to an agent of the state and recorded contemporaneously with the making of the oral statement." Ark. Code Ann. § 16-89-115(e)(2) (emphasis added). Factors to consider when determining if a statement is substantially verbatim "are the extent to which it conforms to the language of the witness, the length of the written statement in comparison to the length of the interview, whether quotations may be out of context, and the lapse of time between the interview and the transcription," which need only be made contemporaneously, not simultaneously. *Winfrey v. State*, 293 Ark. 342, 345, 738 S.W.2d 391, 392 (1987). In this case, we hold that the prosecutor's notes were not "substantially verbatim," and the circuit court was not required to order the State to disclose the notes to Harper.

In the instant appeal, Harper again relies heavily on *Winfrey* to allege that he is entitled to the notes the prosecutor took during her interview with K.S. However, *Winfrey* is distinguishable. Here, in contrast to *Winfrey*, the prosecutor's notes are not substantially verbatim. Prior to trial, the prosecutor explained that she "did not write down verbatim what [K.S.] said," but rather, the notes contained "opinions, observations of the child's behavior, and demeanor throughout the meeting." *Harper*, 2019 Ark. App. 163, at 10, 573 S.W.3d at 603.

There are a few statements in quotation marks in the notes, and Harper focuses on them in his argument that the notes were subject to disclosure under Arkansas Code

6

Annotated section 16-89-115(b). However, a few quotations scattered throughout the notes does not make the statement overall substantially verbatim. The prosecutor took three handwritten pages of notes during the two-hour interview with K.S. One of the factors to consider when determining if a statement is substantially verbatim is the length of the written notes in comparison to the length of the interview. *Winfrey*, 293 Ark. at 345, 738 S.W.2d at 392.

Three pages of handwritten notes from a two-hour interview clearly did not encompass everything K.S. said. Indeed, there is no guarantee that the statements in quotation marks "conform[ed] to the language of [K.S.]." *See Winfrey*, 293 Ark. at 345, 738 S.W.2d at 392. Without a complete recital of K.S.'s statements to the prosecutor, there is the possibility that statements attributed to K.S. will be taken out of context. In considering the factors set forth in *Winfrey*, the prosecutor's notes are not substantially verbatim and, thus, not subject to disclosure under the statute. *See* Ark. Code Ann. § 16-89-115(b).

Harper next argues that the prosecutor's nondisclosure of her interview notes constituted a *Brady* violation. We disagree. There are three elements of a *Brady* violation: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the State; and (3) prejudice must have ensued. *E.g.*, *Duck v. State*, 2018 Ark. 267, at 2, 555 S.W.3d 872, 874. To assess the prejudice component of the *Brady* test, courts consider whether the withheld evidence is material. *E.g.*, *Isom v. State*, 2018 Ark. 368, at 4, 563 S.W.3d 533, 538. Evidence

7

is material—and its suppression prejudicial—if there is a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* The reasonable-probability standard is applied collectively, not item by item, such that the cumulative effect of the suppressed evidence, and not necessarily each piece separately, must be material. *E.g.*, *Duck*, 2018 Ark. 267, at 3, 555 S.W.3d at 874.

Harper argues that the following portions of the prosecutor's notes specifically demonstrate a *Brady* violation:

(1) He argues with my mom and brings up stuff that shouldn't be said. Saw text message about Jared.

(2) Afraid police and DHS were [illegible] to take kids away – told her; if you are lying about Jared. Not [illegible] and we find out you are lying then we can take you away.

(3) "If he did this to you, he doesn't need to be around." Then I just said "He didn't" because I wanted my life back to normal.

The first statement—about seeing a text message—is neither exculpatory nor impeaching. Moreover, prior to the second trial, the State turned over the contents of K.S.'s mother's cell phone to Harper. *See Harper*, 2019 Ark. App. 163, at 7, 573 S.W.3d at 601. As such, Harper was likely in possession of any text message to which the prosecutor's notes were referring; therefore, the notes were not required to be disclosed to him under *Brady*. *See, e.g.*, *Duck*, 2018 Ark. 267, at 7, 555 S.W.3d at 876 (holding that *Brady* was not violated where the State disclosed the cell phone records to Duck prior to trial even though he complained that the records were not in an unaltered form directly from Verizon).

The second handwritten statement is hard to decipher. It appears that someone told K.S. that if she were lying about the sexual-abuse allegations, then DHS could remove her from her home. Harper argues that this is a threat to K.S. that if she did not say that he abused her, then she would be taken away. The State argues that it is quite the opposite, contending this so-called threat was not to force K.S. to lie about sexual-abuse allegations, but to make sure she was telling the truth.

Regardless, this statement was never suppressed by the State. At the first trial, the prosecutor asked K.S. if a DHS worker said anything to her that made her want to recant the sexual-abuse allegations. K.S. responded, "They said that they could take my little brothers away, if, they said they could take all of us away from our home, if something had happened." K.S. also stated that the DHS worker "said that I needed to be protected from [Harper] in my home." Before the second trial, Harper was well aware that a DHS worker told K.S. about the possibility that she could be removed from the home if the allegations were true. Harper chose not to question K.S. about the statement at the second trial. Accordingly, Harper has failed to show that the prosecutor withheld the second statement and violated *Brady*. *See, e.g.*, *Sparks v. State*, 2012 Ark. 464, at 3 (holding that Sparks failed to demonstrate a *Brady* violation where "the materials that [Sparks] assert[ed] were suppressed were available to the defense at the time of trial").

The third statement was also disclosed to Harper. During the interview with the prosecutor, K.S. admitted that she recanted the sexual-abuse allegations because she wanted her life back to normal. At the first trial, K.S. testified similarly. She stated that she

9

recanted the allegations because "[she] missed [her] family." On cross-examination, Harper's counsel asked K.S. if she remembered writing a letter and saying that one of the reasons she recanted was because "all [she] want[ed] [was] [her] family back." K.S. responded, "Yes." Prior to the second trial, Harper was well aware that one of the reasons K.S. recanted the sexual-abuse allegations was because she wanted her life and family back to normal. Because Harper knew this information prior to his trial, he cannot demonstrate a *Brady* violation now.

The third facet of a *Brady* violation requires a showing of prejudice. Harper has failed to establish any prejudice that resulted from the nondisclosure. On both direct and cross- examination, K.S. was questioned at length about the sexual-abuse allegations, her recantations, and the reasons she recanted. Harper was able to question K.S. and point out her prior inconsistent statements and how she reaffirmed the sexual-abuse allegations only after meeting with the prosecutor on March 6, 2017. He successfully impeached K.S.'s credibility with her prior inconsistent statements. Questioning K.S. about the above three statements would not have further impeached the witness. As such, there is no reasonable probability that the result of Harper's trial would have been different had the prosecutor's notes been disclosed to him. *See, e.g., Isom*, 2018 Ark. 368, at 4, 563 S.W.3d at 538.

Finally, we note that we will not reverse an appellant's convictions if the nondisclosure of evidence is harmless beyond a reasonable doubt. *E.g., Taffner v. State*, 2018 Ark. 99, at 15, 541 S.W.3d 430, 439. Such is the case here. As explained above, Harper successfully impeached K.S.'s credibility by questioning her at length about every

10

prior inconsistent statement she made. *See Maiden v. State*, 2014 Ark. 294, at 9, 438 S.W.3d 263, 270 (noting that "once a witness acknowledges having made a prior inconsistent statement, the witness's credibility has successfully been impeached").

K.S. continuously admitted that she had previously lied about the sexual-abuse allegations because she wanted her life back. Despite Harper's impeachment of K.S., the jury nevertheless believed her testimony. We cannot say that the additional questioning of K.S. about the statements contained in the prosecutor's notes would have changed the outcome of the trial. Accordingly, any nondisclosure was harmless beyond a reasonable doubt, and we affirm.[2]

Affirmed.

SWITZER and WHITEAKER, JJ., agree.

*Jeff Rosenzweig*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Brooke Jackson Gasaway*, Ass't Att'y Gen., for appellee.

---

[2]Because we affirm, we decline to address Harper's alternative argument that the case be remanded for a fact-finding hearing before a different judge.