Cite as 2025 Ark. App. 337

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CR-24-405

| | |
|---|---|
| ZABION DESHON BEALER | Opinion Delivered May 28, 2025 |
| APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FIFTH DIVISION |
| V. | [NO. 60CR-22-1852] |
| STATE OF ARKANSAS | HONORABLE LATONYA |
| APPELLEE | HONORABLE, JUDGE |
| | AFFIRMED |

**STEPHANIE POTTER BARRETT, Judge**

Zabion Bealer was convicted by a Pulaski County Circuit Court jury of second-degree murder in the death of Joanna Bell as well as unlawful discharge of a firearm from a vehicle. His sentence was enhanced by five years for using a firearm in the commission of the murder, and he was sentenced to an aggregate term of thirty-five years' imprisonment. On appeal, Bealer argues that the circuit court erred in denying his motions for (1) continuance; (2) mistrial; and (3) directed verdict. We affirm.

Jamie Yount testified that on the morning of April 17, 2022, she and her husband were driving west on Baseline Road in Little Rock on their way to church; she was in the front passenger seat. While stopped at a red light at Geyer Springs Road and Baseline Road, Yount noticed a dark early 2000 model Chevrolet truck headed east; a male (Bealer) was in the driver's seat of the truck; a female (Bell) was standing outside the truck; the two were

struggling over something in Bell's left hand; and Bell was hitting Bealer through the driver's-side window with her right hand. Yount could not see what the object in Bell's left hand was because it had something white wrapped around it. She said that a car was beside the truck, but when the car moved, she saw Bell step away from the truck. She then heard three gunshots, Bell fell backward, and the truck left the scene. Yount said that Bell was no longer engaged in the altercation with Bealer when she heard the gunshots.

Officer Steffone Breakfield, a patrol officer for the Southwest Division of the Little Rock Police Department, testified that he came upon the scene while on patrol; as he approached, he could tell that Bell was holding a rag and bleeding from a wound underneath her chin. Officer Breakfield attempted to provide aid to Bell. Bell was unable to tell him what had happened; she was gurgling and appeared to be in pain. After speaking with witnesses, he believed that the shooter had left the scene.

Ahmarion Reeves testified that he and Bell were friends and that he had picked her up that morning in his blue 2021 Toyota Camry after she had worked the overnight shift at FedEx on Baseline Road. He said that as they exited on Mann Road, they saw Bealer in a dark green truck at a stop sign; Bealer honked at them, and Bell reached over and honked back. When Reeves came to a red light at the end of Mann Road, the truck was following them very closely, "mostly on [their] bumper." Reeves turned onto Chicot Road and then made a right on Baseline Road; the green truck remained on his bumper. Bell looked out the window and yelled at Bealer to back off to no avail. Reeves moved into the left lane, thinking he would let the truck pass; however, the truck pulled beside Reeves's car, and

2

Bealer pointed a partially concealed gun at them. Reeves said that this made Bell angry, and she began mouthing to Bealer and threw an empty Sprite bottle at his truck. The vehicles came to a red light at the intersection of Baseline Road and Geyer Springs Road, with Reeves in the left lane and Bealer in the right lane; Bealer threw a water bottle into Reeves's car through Bell's window, almost hitting her in the face. Bell began to get out of the car; Reeves attempted to stop her because he knew Bealer had a gun, but she got out anyway. Reeves testified that Bell walked up to the truck window and grabbed and punched Bealer; and Bealer grabbed Bell, put her in a headlock, and shot her. Reeves testified that he heard three gunshots, and he heard Bell's body drop to the ground. A scared Reeves "hit the gas"; Bealer followed him for over a mile, but Reeves lost him. Reeves then returned to the intersection to check on Bell.

On cross-examination, Reeves admitted that he had told police Bell was a firecracker; that she told him to let her out of the "fu**ing car"; that she walked up to Bealer's truck window and was hitting Bealer "really hard" through the window; that Bealer told Bell he did not want to shoot her, and Bell told him that she "don't give a fu** about that gun"; and that she hit Bealer with a bottle of hand sanitizer. Reeves agreed that if Bealer had Bell in a headlock, her head would have to be inside the truck. Reeves said that he left after he heard shots and saw Bealer push Bell's body off the truck, running a red light in the process.

On redirect, Reeves said Bell was struggling with Bealer in an attempt to take the gun or to avoid being shot, but Bealer put her in a headlock. Reeves said that Bealer pulled his

3

gun on him and Bell first, before they stopped at the intersection, and he never saw Bell with a weapon.

Tiara Moore testified that she was Bealer's girlfriend in April 2022; that she was on the phone with him during the incident; and that Bealer told her that he had shot Bell twice. Moore denied hearing the gunshots.

Detective Chris Henderson with the Little Rock Police Department testified that he was assigned to investigate Bell's death. He was able to develop Bealer as a suspect in Bell's death from interviewing witnesses and viewing video footage from cameras placed at the intersection. Video showed first Reeves and then Bealer running a red light after the incident; however, no camera recorded the shooting.

Dr. Stephen Erickson, the deputy chief medical examiner at the Arkansas State Crime Laboratory, testified that he performed Bell's autopsy. He noted that Bell had suffered an entrance gunshot wound to the front of her chin, just right of the midline; there was no exit wound, and there were no other wounds on her body, including to her hands. He explained that there was powder stippling around the wound, which occurs when the gun is close enough to the skin to discharge unburned gunpowder that causes tiny red marks when it hits the skin; because of the stippling, he opined that it was a close-range gunshot wound from between one and three feet. Dr. Erickson explained that the bullet caused a great deal of injury to Bell's tongue and the back of her throat, which, in turn, caused a lot of bleeding and interfered with her ability to breathe; he explained that she breathed in a lot of blood,

4

causing her to suffocate. He classified Bell's death as a homicide due to a gunshot wound to her head.

Although listed as his third point on appeal, due to double-jeopardy concerns, we must first address Bealer's challenges to the sufficiency of the evidence. *Oliver v. State*, 2025 Ark. App. 186. A motion for directed verdict is treated as a challenge to the sufficiency of the evidence. *Gregory v. State*, 2025 Ark. App. 164, 708 S.W.3d 844. When reviewing a challenge to the sufficiency of the evidence, we assess the evidence in the light most favorable to the State and consider only the evidence that supports the verdict to determine if there is substantial evidence to support the verdict. *Id.* Substantial evidence is evidence of sufficient force and character that it will, with reasonable certainty, compel a conclusion without resorting to speculation or conjecture. *Id.* Matters of credibility are for the jury, which can choose to believe part or all of any witness's testimony and may resolve any conflict in the evidence or testimony. *Miller v. State*, 2025 Ark. App. 229, ___ S.W.3d ___.

A person commits second-degree murder if he or she knowingly causes the death of another person under circumstances manifesting indifference to the value of human life. Ark. Code Ann. § 5-10-103(a)(1) (Repl. 2013). A person commits first-degree unlawful discharge of a firearm from a vehicle if the person "knowingly discharges a firearm from a vehicle and by the discharge of the firearm causes death or serious physical injury to another person." Ark. Code Ann. § 5-74-107(a)(1) (Supp. 2021). A person acts "knowingly" with respect to his or her conduct or the attendant circumstances when he or she is aware that his or her conduct is of that nature or that the attendant circumstances exist; or a result of

5

the person's conduct when he or she is aware that it is practically certain that his or her conduct will cause the result. Ark. Code Ann. § 5-2-202(2) (Repl. 2013).

On appeal, Bealer argues that Yount never saw Bealer point a gun at Bell or discharge a gun from a vehicle. He further argues that Yount's testimony was inconsistent with Reeves's testimony and the video evidence. He also argues, without citation to authority, that Reeves's testimony did not establish substantial evidence that Bealer acted knowingly.

A criminal defendant's state of mind is seldom capable of proof by direct evidence and must usually be inferred from the circumstances. *Maina v. State*, 2025 Ark. App. 38, 704 S.W.3d 364. A person is presumed to intend the natural and probable consequences of his or her actions. *Id.* Intent also can be inferred from the type of weapon used; the manner of use; and the nature, extent, and location of the trauma suffered by the victim. *Id.* The existence of criminal intent is for the jury to determine when criminal intent may reasonably be inferred from the evidence. *Id.* Any inconsistencies in the evidence and testimony are for the jury to resolve, and the jury determines the credibility of the witnesses. *Miller*, *supra*.

We hold that there was substantial evidence to support Bealer's convictions. Bealer had shown Reeves and Bell his gun as they drove. When they stopped at the intersection of Baseline and Geyer Springs, Bell got out, and Reeves said that Bell and Bealer struggled over the gun. Reeves said he heard Bealer say that he did not want to shoot Bell; however, both Reeves and Yount heard gunshots and saw Bell fall to the ground. Moore testified that Bealer told her that he had shot Bell twice. Yount testified that Bell was no longer in an

6

altercation with Bealer when Bealer shot her. Dr. Erickson testified that the gunshot was from one to three feet from Bell and that she died due to a gunshot wound to her head. We affirm on this point.

Bealer next argues that the circuit court erred in denying his motion for a continuance. On the day before trial, Bealer moved for a continuance, arguing that the State had failed to provide one of the videos that captured the beginning of the incident; the shooting occurred a mile from the location of the video. At the hearing on the motion for continuance, Officer Henderson testified that he had obtained the video in question and downloaded it to a thumb drive; however, other officers had also used that thumb drive, it had been encrypted, and no one came forward to admit he or she had encrypted it and to provide the password. He testified that the IT department had been working to unlock the thumb drive to no avail, and that he had been told that unless the person with the password came forward, it would likely be inaccessible. Defense counsel wanted to have his own expert attempt to unlock the thumb drive.

In denying the motion for continuance, the circuit court found that the State is required to preserve only evidence that is expected to play a significant role in a defendant's defense, and there was no evidence presented that the video possessed any exculpatory value. Furthermore, the circuit court found that there were witnesses present who were ready to testify about what they had seen and heard, so there were other reasonably available means to obtain the evidence that was believed to be on the video.

A motion for continuance is addressed to the sound discretion of the circuit court; its judgment will not be reversed on appeal in the absence of a clear abuse of that discretion. *Brown v. State*, 374 Ark. 341, 288 S.W.3d 226 (2008). Among the factors to be considered by the circuit court in ruling on a motion for continuance are the diligence of the movant, the probable effect of any evidence that the movant alleges is unavailable, and whether an affidavit establishing the legitimacy of the evidence to be produced has been filed. *French v. State*, 271 Ark. 445, 609 S.W.2d 42 (1980). On appeal, the appellant bears the burden of establishing that the circuit court abused its discretion and that he suffered prejudice amounting to a denial of justice. *Harper v. State*, 2019 Ark. App. 163, 573 S.W.3d 596. When the prosecutor fails to provide information, the burden is on the defendant to show that the omission was sufficient to undermine the confidence in the outcome of the trial. *Id.*

We hold that the circuit court did not abuse its discretion in denying Bealer's motion for a continuance because he cannot demonstrate prejudice from the denial. The circuit court found that no evidence was presented that the video contained any exculpatory evidence; in fact, the video was from a location a mile away from where the shooting occurred. The circuit court also found that there were witnesses available to testify about what they had seen and heard. Because Bealer cannot demonstrate prejudice, we affirm.

Bealer's last argument on appeal is that the circuit court erred in denying his motion for mistrial. During closing arguments, Bealer's attorney argued that Bealer was justified in shooting Bell because she was hitting him "really hard." In response, the State argued that

8

Bell may have hit Bealer hard, but there were no injuries to her hands, and there was no evidence that Bealer was injured. Bealer's attorney moved for a mistrial, arguing that the State had shifted the burden of proof. The State refuted that argument, stating that it was only pointing out that there was no proof of any injury to Bealer, which was in response to the allegation that Bell was hitting Bealer hard. The circuit court denied the motion. On appeal, Bealer argues that the denial of his motion for mistrial was an abuse of discretion.

A mistrial is a drastic remedy that should be used only when there has been an error so prejudicial that justice cannot be served by continuing the trial or when the fundamental fairness of the trial itself has been manifestly affected. *Marbley v. State*, 2019 Ark. App. 583, 590 S.W.3d 793. The circuit court is in the best position to decide the issue of prejudice because of its firsthand observation. *Id.* The circuit court has wide discretion in granting or denying a motion for a mistrial, and absent an abuse of that discretion, the circuit court's decision to deny a motion for a mistrial will not be disturbed. *Id.*

We hold that there was no shifting of the burden of proof by the State and, therefore, no abuse of discretion by the circuit court in denying Bealer's request for a mistrial. The prosecutor's statements regarding the lack of injury to either Bell or Bealer were in direct response to Bealer's attorney's claim that Bealer acted in self-defense because Bell was hitting him "really hard," not an assertion that Bealer had failed to show that he suffered injuries at the hands of Bell. The State is permitted in rebuttal to comment on matters that were discussed or invited by the appellant's preceding closing argument. *Swan v. State*, 2018 Ark. App. 468, 559 S.W.3d 778.

9

Affirmed.

VIRDEN and MURPHY, JJ., agree.

*Willard Proctor, Jr., P.A.*, by: *Willard Proctor, Jr.*, for appellant.

*Tim Griffin*, Att'y Gen., by: *A. Evangeline Bacon*, Ass't Att'y Gen., for appellee.